Good morning. May it please the court, my name is Andrew Hendrick. I'm the attorney for the appellant Brandon Williams. The question in this case is whether Mr. Williams has stated a claim for retaliation in violation of his First and Sixth Amendment rights when police officers responded to an accident where he was involved in with a false accident report and caused him severe emotional and other injuries. Because the officer's actions would likely deter a person of ordinary firmness from the exercise of their constitutional rights, the trial court erred in dismissing this case. Elements of constitutional retaliation are first, that Mr. Williams engaged in protected First or Sixth Amendment activity. Second, that the officers took some action that adversely affected his rights. And last, that there was a causal relationship between his exercise of rights and the officer's conduct. The first element, that Mr. Williams exercised constitutional rights, is not disputed in this case. The question is on the second element, whether Mr. Williams suffered an adverse action. To be adverse, the officer's conduct must be likely to deter a person of ordinary firmness from the exercise of their constitutional rights. It must result in more than a de minimis inconvenience, but it does not need to rise to the level of an independent violation of his rights. It needs only to chill his exercise of the rights and not freeze them completely. It's a fact-intensive question and depends on the circumstances and the parties involved in their relationships. The factual context is what's important here. This is not an accident report drafted in the abstract or in a room. This is the scene of a horrific automobile accident where the officers appear. Mr. Williams is severely injured. The officers, rather than looking out for him as the victim, are instead standing off together in a group, pointing at him, talking about him, and then make up a completely false accident report with the intent to try and deprive him of an opportunity to be compensated for his injuries in that accident. As a result of Mr. Williams being in this vulnerable position, he suffered severe emotional injuries and physical injuries as a result of the officer's actions. The officers' actions were so serious that the trial court, in considering a state law intentional infliction of emotional distress count, dismissed that count without prejudice because the trial court believed we had stated at least a possible cause of action under state law. Under these circumstances, a person of ordinary firmness in Mr. Williams' situation would likely have been deterred from future exercise of their rights. Just so I fully understand what you were pointing to as the retaliatory action that had a materially adverse effect, it's the false statement in the accident report? That is the materially adverse action, the false accident report? Yes. It is the false accident report, but also the actions of the officers on the scene, standing and talking about him and pointing at him and making clear to Mr. Williams that we know who you are. Is that alleged? As I read the complaint, and I think as the district court read the complaint, the allegation in the retaliation section was that the false accident report, that was the thing that was supposed to cover and have the materially adverse effect on him. And the pointing at the scene of the accident was over an intentional infliction? That's correct. That's in the complaint, but it is under the heading of the emotional distress count. So the district court, when it comes to the accident report, at least says those false statements are not materially adverse because the report can't be introduced in court. Do you contest that part of the analysis? I do not contest whether or not the accident report was admissible. I don't dispute that. Do you dispute that it follows from that, that a false accident report is not materially adverse? I do dispute that. So why is the false accident report materially adverse if it can't be used in court? Two reasons, and one is Mr. Williams or an ordinary person, a layperson, probably isn't going to know whether that accident report is admissible or not. And we are seeking here not harm as a result of not being able to prosecute the civil action, but harm as a result of the emotional injuries suffered by Mr. Williams in the officer's false accident report. So he doesn't know, and an ordinary person would not know whether or not this accident report is going to be admissible or not. And second, by the time it becomes irrelevant, by the time that accident report becomes irrelevant, and the civil action is prosecuted and settled, it's several years later. And by that time, the emotional harm has already been done to Mr. Williams. It's been two or three years from the time of this incident before this civil case was resolved. So the emotional injury has happened at that point. If we were claiming that this prevented him from filing the civil action, that might be more relevant. But our claim is for the emotional harm that this caused him. And the emotional harm is what has the chilling effect? Or are those two separate questions? I think it's, I think it is the emotional harm that is a chilling effect. And that's why I think the context here is important. As he has, you know, just been terribly injured in this accident, and, you know, officers are, you know, filing this false police report. And he is scared because of that. He's upset. And he's harmed. And a reasonable person in that situation is, I think, going to think twice. Do I want to endure that again before it, you know, just to challenge a simple misdemeanor trespassing charge? I have found that I think our law is not sort of entirely clear on what is required here. And one line of cases says that false statements, even false accusations by government officials by themselves are not materially adverse, even if they would likely have a chilling effect. And that's like our Suarez case and a couple of cases in that line. I really, I hate to put you on the spot, because I think we've said a lot of different things. And it's not always clear what the standard is here and whether the chilling effect by itself is enough. But so your argument is basically, look, if this would cause a reasonable person to think very hard before they exercise their rights again, that's sufficient. That's right. And I think it's at least a jury question. And the court's going to let this go to a jury. Don't you have more than falsity in the facts in this case? Don't you have animus? We do. It's intentional. More than just falsity, because, you know, an officer might scribble anything wrong. They made statements about, well, that's the guy who, right? That's exactly right. This wasn't just a mistaken accident report. This was intentional because they said this is the guy in court two years ago who gave you a ration of shit, McClanahan. And that's why they did this. So it's the animus reflected in the false accident report that is causing this reaction from Mr. Williams and his emotional harm. It seems to me in these facts here, I mean, hypothetically, you may be afraid to even call the police because you've come to an accident where you were hurt. And it was one of these facts that you would put the wrong thing down there. I couldn't be afraid to call a 911 number. I think that's exactly right. I think this puts Mr. Williams in fear of any interaction with the police going forward, particularly these particular officers. And these weren't even officers directly he was involved with, were they? One of them was. Officer McClanahan was the officer he challenged at the trial of the misdemeanor charge. And Officer McClanahan was one of the officers who responded to this accident. There was two other officers I believe we've got in the case. There's a third one who has been dismissed from the state law case and would likely be dismissed from this case also if it's remanded. And this was a motion to dismiss, right? This was on a motion to dismiss. By what summary judgment? No summary judgment. There was not even a hearing on the motion to dismiss. So it's all on the pleadings. Did you ask for a hearing? We did, I believe. And no one was given? There was no oral argument or hearing. I believe we asked for one. It's a routine that I can't specifically do, but I always ask for one. So I'm sure I did, but I can't recall at the moment. Was it disputed that these comments were made by the police officer? We didn't get that far, did we? We never got that far. We do have it on body cam tapes. We've got it on video. I'd like to speak briefly on the element of causation between the protected act and the officer's conduct. Of course, the two elements that support our causation argument are, first, the statement on the scene by the officers that that's the guy who you were just up against, McClanahan. And, second, the complete divergence between what's in the accident report and the facts on the ground of the accident. The driver's going 75 miles an hour. He has a .3 blood alcohol level. There's a debris field everywhere, and the accident report does not come close to reflecting what actually happened. We also have two other issues. The district court also dismissed a conspiracy count because it held, after holding, there was no constitutional violation, there was no violation to support the conspiracy count, and it also dismissed the state law emotional distress claim without prejudice. So we would ask that this court reverse the decision on retaliation and remand for further proceeding from the retaliation, and if the court does that, we would also ask that the court remand the conspiracy and state law accounts for further consideration in light of there being, at that time, a constitutional violation. It has been filed in the circuit court of Virginia Beach. It's still at the pleading stage. There is a demur hearing coming up in about three weeks on that case. We're asking for that now. Certainly we did when we filed this appeal. By the time there's a decision on this case, that may have progressed far enough that it wouldn't make sense at that point, but at least for now, we're still asking for that. Thank you. I reserve the rest of my time. Thank you, Mr. Hendrick. Mr. Casey. Thank you. Good morning, Your Honors. Brian Casey. I represent Officer John D. McClanahan. Mr. Kales represents the other defendants in the case. He's going to address the conspiracy and emotional distress claims, and I'm going to address the retaliation claim. He may also address the retaliation claim, but we're going to split our argument up in that manner. The plaintiff, Mr. Williams, as you know, exercised his First Amendment rights in an encounter with Officer McClanahan in which he recorded that encounter where Officer McClanahan charged him with trespassing. He then later exercised his Sixth Amendment rights when he defended that charge, first in the general district court and then on appeal in the circuit court where that charge was dismissed. He contends in this case that the officers, the defendant officers, retaliated against him for his exercise of those rights, as I've just described, by, in paragraph 33 of the Second Amendment complaint, misrepresenting facts on a police crash report for an accident that occurred some eight months after he had exercised his First Amendment rights in recording the encounter with Officer McClanahan and 15 days after the trespassing charge was dismissed. That's when the accident happened. And he alleges or claims that the officers, the defendant officers, all misrepresented facts on one police crash report, and that was the retaliatory act. The district court found that was insufficient to state a claim for retaliatory claim under Section 1983. And in order to state such a claim, in order to pursue such a claim under Section 1983, the claimant must establish that there was a retaliatory adverse act. And that act must be material. And as counsel said, it can't be de minimis. It can't just be an inconvenience to the claimant. It must be material. And what is material? The act must likely deter the person or a person from exercising their constitutional rights in the future. So the question here is whether misrepresenting facts on a police crash report would likely deter one from defending themselves in a future criminal action unrelated. That's the Sixth Amendment claim. And whether misrepresenting facts on a police crash report would likely deter someone from in the future not exercising their First Amendment rights, for example, in this case, by recording a future encounter with a future police officer. The district court correctly said that it would not deter or chill such exercise. And central to the district court's ruling is the fact that in Virginia, a police crash report or a police accident report is pretty useless. It can't be used in a criminal proceeding. It can't be used in a civil proceeding. But you know what? Here's something I don't get at all. Even if you think about the retaliatory impact just as really narrowly confined to just this allegedly false accident report, I don't see why that wouldn't be quite material because officers can testify and the report tells you how they're going to testify. And in fact, I found Virginia cases saying they can also use the report to refresh the officer's testimony at your accident trial. So how does this not tell Mr. Williams, if you try to sue this other driver, these police officers are going to testify to what's in the report. And if they forget to, they can use the report to refresh their memory. All of what you said is absolutely correct. The officers can use their report to refresh their recollection. But the report itself is inadmissible. Okay. But, I mean, the question is will this deter him and might it act to deprive him from the right to bring this case or a property interest in this case? Right. If you know the police officers, by hypothesis, none of this has been tested, are going to get up and lie on the stand in a way that will prevent you from recovering, that seems quite tangible. Well, that's an argument that a false police crash report would deter somebody from bringing a personal injury claim in civil court, which is distinct. It's that knowing that if you exercise your rights, the result will be you're deprived of a property interest in your potential recovery from an accident. That is a very tangible material impact. We usually think being deprived of a property interest would be enough to deter someone from exercising their rights. But the issue is whether or not there is a chilling effect on the exercise of First and Sixth Amendment constitutional rights, not whether or not there's a chilling effect on the exercise of a right to bring a personal injury action. So, hypothetically, it will cost Mr. Williams $50,000 that he exercise his Sixth and First Amendment rights, which resulted in a false accident report, which now knows will deprive him of what would have been a $50,000 recovery. If it costs you $50,000 to exercise your First Amendment rights, I think that has a deterrent effect next time you're thinking of exercising your First Amendment rights. Tell me where I got that change. Okay, so let me make sure I understand the hypothetical. It's not a hypothetical. It's basically what's alleged here. Well, he pursued his personal injury claim here. So he was not deterred. In that respect. The question isn't was he deterred from bringing. As you say, that's not the question. Right. If this false accident report will cost Mr. Williams a recovery he otherwise would have gotten, that will deter the exercise of First Amendment rights. It may, but it can't because it's inadmissible in evidence. It can't be used in the civil proceeding that he brings for a personal injury. It couldn't be used in a criminal proceeding. There was no criminal proceeding. But hypothetically, if there was for a DUI or something like that, it can't be used there. And it can't be used. But the point that the district court made is that it can't be used in a civil proceeding. And therefore, a document, whether it's true or false, whether it contains accurate information or inaccurate information, is irrelevant because it can't be used in a proceeding. It can't be used to impeach, can it? It cannot be used to impeach. You mean to tell me that if the police officer, and this is a counterfactual, it's not a hypothetical, but a counterfactual here. Right. The police officer made the report that was made here with the falsities in it, that kind of thing. If he went to trial and said, you know, it didn't happen that way, it happened this way, that the defendant really did, you know, was driving fast and all those kind of things like that, you mean to tell me they couldn't bring that up and say, wait a minute, impeach him and say, here is the accident report that was written that day and impeach that recanting, if you will, testimony at trial. It could be. In other words, if the police officer testified inconsistently with what he put.  Then if he changed and told the truth and said, no, it wasn't like that, the defense is going to say, wait a minute, excuse me, is this not the report you filled out that day? It didn't say anything about I was speeding, it was alcohol. Sure it does. It can come in as impeachment.  If the police officer who prepared the report testifies contrary to, testifies to facts contrary to what he wrote on the report. That's right. So it can be used. But the report by statute itself, by statute, the report is for the use of the Department of Motor Vehicles. You can't use it offensively, as an offense, as an assault. Correct. That kind of thing. You can't say, well, I know you're liable civilly because the police officer's report supports that. That's where you can't use it. But it can be used for impeachment. In the context of retaliatory adverse, material adverse actions, I mean, the obvious one is arrest. Arrest somebody for, you know, pretextual, for exercising. What happened the first time. Their constitutional rights. Apparently with Mr. Williams. But that's not what's alleged. But when you look at the context here, right, your position is, And I'm just taking the allegations as true. Fully understanding this has not been tested yet. But so first, Mr. or Officer McClanahan, who lies about a trespass, arrests Mr. Williams, lies about it in court, gets Mr. Williams falsely convicted. Then Mr. Williams shows his video and he gets the case dismissed. And then a few days later, Officer McClanahan files a false accident report in his case to retaliate against him. And your position is all of that happens, but a reasonable person in Mr. Williams's position would not feel chilled in exercising his First Amendment rights next time he runs across Mr. McClanahan. But the Second Amendment complaint only alleges that the only retaliatory action taken was the misrepresentation. When I think about whether that misrepresentation, you have told me the standard is, would a reasonable, would this action be likely to deter a reasonable person? A reasonable person in Mr. Williams's position knows this officer lied about me once, it got me arrested. He lied about me a few days after I got that one dismissed. He lied about me again in a false accident report. He's not supposed to worry that this police officer will be back for a third time if he tries to exercise his First Amendment rights against him again, because I don't see how a reasonable person would not come to that conclusion. The only allegation in the Second Amendment complaint is that, for a retaliatory act, is the preparation of a police crash report that is inadmissible in any proceeding. And the district court correctly found that that, an inadmissible police report, whether it's false or true or not, is not sufficient to deter a reasonable person. And I see my time has expired, so I'm going to let Mr. McHale get up here so that he can further elaborate on this. Thank you, I appreciate it. Good afternoon. My name is Jim Kales. I'm here on behalf of the other defendants other than Mr. McClain. And I join Mr. Hedrick in explaining that the, and to point to the court, I don't think my clock's ticking. I want to get all the fair, I don't want to get more time than anybody else should. So Sergeant Mitchell will be likely dismissed. She has been dismissed in the state court proceedings that are pending in the circuit court for the City of Virginia Beach, Court of Plenary Jurisdiction of the Commonwealth. And one thing I will add in response to Judge Harris's questions to opposing counsel, there is a little bit of a slight nuance in terms of the procedural history where we are in that case. There is, in about three weeks' time, a motion, a demur hearing, which is a state practice of a motion to dismiss. However, that will be the second demur hearing in June, early June, or no, I'm sorry, late June of this year. The circuit court for the City of Virginia Beach conducted a hearing on the initial complaint that was filed there on the intentional infliction of emotional distress and the demur filed by the defendants and sustained the demur. The court granted leave to amend. So we are in a position in the state court with respect to the supplemental jurisdiction issue of a court of the Commonwealth already having made a substantive ruling and we are well along the path of that claim proceeding in the circuit court for the City of Virginia Beach. I believe... And your point is what has the authority here in the federal court? That the district court's decision to decline supplemental jurisdiction in the state law count of intentional infliction of emotional distress was correct and that the plaintiff appellant here, by agreeing to proceed forward in the circuit court case without seeking a stay pending this appeal or anything of that nature, has essentially weighed the argument that they are entitled to this matter being remanded back with an intentional infliction of emotional distress claim affixed to it. It would create a quagmire between issues of comedy and federalism to allow alternate determinations, particularly once the substantive ruling has already been made. It is not a final ruling. I am not representing that to this court in any way. But it is still, nonetheless, a ruling that the pleading from which the district court here declined to exercise supplemental jurisdiction is based. So I would submit to the court that the dismissal of the supplemental jurisdiction count was without prejudice by the district court. The plaintiff has proceeded properly and promptly to file, I think it was a day or two after, the district court decision they filed in the circuit court of the City of Virginia Beach in order to have the intentional infliction case preserved. I would also submit that the request specifically with respect to both the retaliation, I'm sorry, both the conspiracy and the intentional infliction count is somewhat strange. They are asking for the court to send it back for reconsideration. The relief requested in both the opening appellant's brief and their reply brief with respect to the conspiracy count and with respect to the intentional infliction of emotional distress count is not to seek reversal. It's simply to direct the court to reconsider them. I would submit that the court had considered them. There's no basis for it. But that's what we always do. I thought that was exactly right. The district court relied to dismiss the conspiracy claim on the fact that the court had found there was no retaliation claim. And so in the absence of a constitutional violation, there can't be a conspiracy to deprive someone of constitutional rights. But if we disagree on the retaliation point, then we would send back the conspiracy question so that the district court can consider it now understanding that there was a constitutional violation. What's wrong with that? With respect to conspiracy, I understand Your Honor's point and I don't disagree. With respect to intentional infliction of emotional distress, nothing in the elements of the intentional infliction of emotional distress The district court said because there is no federal claim properly before me, I'm not going to exercise supplemental jurisdiction over state law claims. If there is a constitutional claim properly in front of the district court, assuming hypothetically we disagree on retaliation, normally, and I take your point about the existence of the state proceedings, but normally we would also just say, now you should reconsider whether you want to exercise supplemental jurisdiction knowing that you do have a constitutional claim that will go forward. Under ordinary circumstances, I would agree with Your Honor's representation and the procedure forward. In this case, it is different for the reasons I've already explained. Turning to the conspiracy count, it's meaningful to point out that counts one, count three, and count four of the second amended complaint have all essentially been abandoned on appeal. There's not really any due process issue before the court, nor is there an equal protection issue before the court. It does not appear that that is the basis upon which they are claiming their conspiracy. So unless the court wishes me to entertain those issues, I'm not going to address them here because I do not believe there is an adequate basis set forth in the briefing to explain that they are seeking relief because of a conspiracy to violate equal protection or a conspiracy to violate due process. With that in mind, however, everything which Mr. Casey has explained with respect to the retaliation count, I believe explains, and I think clearly explains, why there is not a retaliation. And without the retaliation, there cannot be a conspiracy. I represent Officer Sergeant Van Fossen, who is the one who is on video making the intemperate statement. And we do disagree with the district court in footnote nine where Judge Davis carefully lays out the act requirements that would potentially support part of the conspiracy claim. We don't quibble with those. We just disagree with them. They're not before your honors today, and they're not here on appeal. We do believe that it is necessary for there to be a constitutional violation. There can't just be an agreement to do the constitutional violation. I think the Ritchie v. Jackson holding and the Hinkle v. City of Clarksburg cases make clear that there has to be an underlying deprivation. There can't be simply an agreement among officers. In point of fact, these crash reports, and Mr. Casey and I have worked together for years, these crash reports are quick reads of what happens. And they are filed promptly after the accident. They're filed without a huge amount of investigation unless there are circumstances from a particular accident that would require them, say, a death investigation or something along those lines. Those tend to get filed later. Because these crash reports are not evidence, the Supreme Court of Virginia has not allowed them to be admitted for any reason. While they may be a record upon which a police officer may be cross-examined at trial if he or she testifies inconsistently with that statement, it is nevertheless not admitted itself into evidence. And even a reference to it as being a crash report is problematic under Virginia jurisprudence because the statute plainly, as interpreted by the Supreme Court of Virginia in the ACIAR case, makes clear that they do not come into evidence. And in practice, even a reference to a crash report is a very good way to have a circuit court judge in the Commonwealth of Virginia very irritated with you and potentially even give an admonition and a curative instruction to the jury that they are not to regard. But the officers can testify, correct? The officers can testify, absolutely. Don't you think officers' testimony will somewhat mirror what the report says? In the ordinary case, I believe it would because, again, not conceding for a moment the allegations that these statements were intentionally falsely presented or anything of that nature. But as alleged... So you're right. You're not conceding the facts at all. We're not conceding them. But yet this was dismissed for a motion to dismiss. It was dismissed on a motion to dismiss because the district court found... As a matter of law, a person couldn't be intimidated by the police officers saying these things and saying, Yeah, that's the guy who did this as a matter of law. That was the ruling, right? As a matter of law, as I understand Judge Davis' ruling, a fine district judge who carefully weighed the evidence. We did not have a hearing in this, as counsel explained. There was no evidence. I'm sorry? There was no evidence.  What do you mean? I stand corrected, Your Honor. He weighed the allegations. No hearing. No hearing, Your Honor. So did he weigh facts? He weighed the allegations contained in the second amended complaint. Did he weigh facts? He did not find facts, but he... What did he weigh? He weighed the allegations contained in the second amended complaint against the applicable law. Based solely on the pleading? Yes, Your Honor. But as a matter of law, so no factual questions. What about the fact that you stipulated that this was based on animus? No, Your Honor. Well, then how do you resolve that without a hearing? That's a summary judgment issue, Your Honor. And I'm about to... I'm out of time. I know we didn't get that far with the motion to dismiss, wasn't it? It was a motion to dismiss. However, Your Honor, if the allegations contained in the second amended complaint in and of themselves are insufficient to create an issue of constitutional moment, then the district judge is obligated and should dismiss the case. That's what we believe Judge Davis did in this case. But didn't they plead? Didn't they plead? The plea was that they pled that it was animus. It was deliberately done because of what the prior encounter was with the police officer. That was pleaded, Your Honor. However, the necessary element to the retaliation count is not necessarily that there is animus. There has to be the effect of chilling a reasonably minded person. Yeah, and animus makes it real kind of clear. It's not reckless. It's not by mistake. It's animus. It is. There was an allegation of animus, Your Honor. The district judge weighed that allegation in light of the applicable law. And we submit correctly found that there was no constitutional violation because under the circumstances of this case, particularly as it related to the sole allegation supporting the retaliation, being the creation of an allegedly false police crash report that could not be used in any court of the Commonwealth for any material purpose that would cause that document to be admitted into evidence. I sort of expected this case to be about something else. But as I understand it, your position is the standard is would this action, the allegedly false accident report, in the circumstances under which it was created, would that likely deter a reasonable person from exercising his rights? That's the question. Yes, Your Honor. Okay. What if instead of filing a false accident report, Officer McClanahan shows up at the accident and says to Mr. Williams, like you again, if you ever film me again, you'll be sorry. Would that likely chill somebody in exercising his First Amendment rights to film Officer McClanahan? Under those circumstances and without doing violence to Mr. Casey's representation of Officer McClanahan, that is a much closer question than what we have here. That is a close question. Yes, Your Honor. Yes, Your Honor. But in the circumstances... much firmer mind and body than the people I know. Because most of the people I know, if a police officer said, you will be sorry, they would be deterred. If that were the facts of this case, Your Honor, I understand. And I agree it would be... I guess I don't understand why filing a false accident report isn't that, like, to the 10th power. Because it's not just a threat that I'm out to get you. It's a performative act, and I will do it by lying about you. But that seems really... like that might strike a reasonable person as quite frightening. I understand, Your Honor. But if I may counter-hypothesize, for lack of a better word. If this were a circumstance where an officer were to have, for some reason, charged the plaintiff in this action, Mr. Williams, with a traffic infraction, with, you know, something that were found in the wreckage of the vehicle, something that would, in that context, be a false accusation, that is a much different animal. That is the kind of deterrent conduct that would chill and be a retaliation, an affirmative loss and injury. In this case, Mr. Williams did not have any of that. A police crash report is not a summons. A police crash report is not picked up by any credit reporting agency. It's not something that creates a detrimental effect to Mr. Williams in this case. He, in the state law case, was... and when I refer to the state law case, I'm referring to the action against Mr. Amon, the tortfeasor in the underlying tort case, the person with whom Mr. Williams had the crash, which has since been resolved. So in terms of there being any loss, there's no allegation in the second amended complaint that the resolution of that case, which admittedly occurred after the filing of the second amended complaint, but there's nothing on brief and there's no supplement to the record or the allegations contained in this case, that indicates that the failure of... police crash report caused any detriment to Mr. Williams in the underlying tort case. But it is a detriment. We talked about anxiety and a lot of things that you told me. He's not pleading that I lost money in the civil case, but think about this, counsel. I know you're representing your client, but can you imagine in an ordered society, one of the things I think all of us depend on and rightfully so, that police officers are given the respect and the authority to have arrest authority and have weapons and those things, because if you're in harm's way, you depend on them to respond to you. They don't make perfect decisions, but I don't think you depend... Say, you know what? I'm investigating this, and as a player here, that I'm going to write down on this report something that's totally inconsistent with the facts. That's what's planned, right? That is what's planned, yes, sir. It will be a chilling effect to... I mean, and you know, I'm a lawyer and a judge, but if I... if the police officer around me said, you know, like, whenever I see you, you know, and this is not the first encounter, that would be quite disturbing. I don't know what universe you're in, but the universe I'm in, that's dangerous. That's the thing that, unfortunately, not to this case, leads to people dying when encountering the police officers. And those are people that are strangers, not to mention somebody who's already targeted, and say, oh, that's the person who gave you shit. That's what he said, right? It is, in essence, Your Honor, yes. I don't know why the counsel was so, you know, stupid with that. Yeah, he said, that's the one, isn't it? And then all this proceeds... That is disturbing. I find it to be quite disturbing in an ordered society and democracy in a country of constitution. We depend on police officers. They're not perfect, but we don't spend on them to say, I'm going to change the scenario because I still remember you, and they remember you. You don't find that disturbing? With respect to... Yes, Your Honor. You don't find that disturbing? In the context of this case, I do not find it disturbing. Fair enough. And let me explain why. If I may, again, I'm far over my time. Because I'd like to hear why you don't find it disturbing. I don't find it disturbing because this is a circumstance where there is a standoff between Mr. Williams and the officers who were discussing his prior interaction with Officer McClanehan. I may be wrong about this, and the Second Amendment complaint isn't very clear, but in the context of this, I believe Sergeant Van Fossen was talking to other officers nearby, essentially saying, you know, that's the guy that gave McClanehan a ration of shit. Okay? That is not a great thing to say, but it's not something that, from a distance where Mr. Williams is far away, isn't privy to the conversation. It's not a proximal issue where Sergeant Van Fossen was standing directly over Mr. Williams with the other officers saying, that's the guy. That's a different issue. But in the context of this case, Your Honor, I don't find that disturbing because police officers, while they are not perfect, they are also human. And there has to be a little bit of grace for them to be able to communicate with each other in phrases and language that isn't maybe what you would say in this courtroom other than discussing particular language. But they went beyond the verbal, didn't they? They alleged the report. They alleged the report. Forget about whether it's admissible or not, the report. The report. Yes, Your Honor. Just following through with the verbal colloquy. I believe there were different authors, but Van Fossen, I don't believe, made the report. I believe that was Officer Stone. The allegation, right, is that they sort of did it together. That is absolutely the allegation. So, I mean, I take your point about like people say things, people say things and we should have a little bit of grace, but that's not that's not the allegation. There's no indication this case would be filed because of what was said at the accident site. It's the false report. Yes, Your Honor. The false report, again,  Should we have grace for that too? Again, allegedly false police reports? I don't think that is something where we should say, oh, you know, it happens. Well, it it takes us back to an issue that was addressed in the district court and argued on brief by Mr. Casey on behalf of Mr. McClannan and something that actually came up in the state court proceedings, but the Briscoe v. Leheuhold which imposes absolute immunity for officer testimony under oath. Statements by police that are not accurate should not be made. But do they raise an issue of constitutional moment? And in a context where No, not when the issue is inaccuracy. I'm sorry, Your Honor? Not when the question is inaccuracy. They don't. And they shouldn't. They're inaccurate. That's not that's not what they pleaded. This case is not pleading inaccuracy. It is not pleading it. No, it's not a case about there's a legend that pleaded this is not a case of inaccuracy. Oh, he misjudged. It should have been 200 feet, but they put 250 feet. Oh, they said according to the left. No, they went to the right. This is not a case that is pled inaccuracy. This is a case of animus and retaliation. That's what's pled. And it was not without even a hearing. It was dismissed. Not in summary judgment, but dismissed without even hearing. Yes, Your Honor. Yeah. With respect to inaccuracies, every there's inaccuracies of an innocent nature where as Your Honor is giving examples where innocent distance mistakes are made. The distance I have between myself and Judge Flanagan, for instance, I may say is 20 feet.  Every client I've ever represented who I've ever asked to give a distance. So you agree that this is not that case? This is not that case, but there is a second type of inaccuracy and that's the one in this case. And what's that second one? An intentional inaccuracy. They are alleging an intentional inaccuracy, but under Briscoe v. Lequeu, absolute immunity applies to police officers who are intentionally inaccurate in giving false testimony. Absolute immunity.  Your Honor. That's pretty good. Qualified immunity. Absolute. My reading of Briscoe v. Lequeu is that officers who  who deliberately point somebody out as having a prior situation and animus, they have absolute liability. Immunity. I mean immunity. That is my understanding. What's the other case? Briscoe v. Lequeu, L-A-H-U. I believe it's the Supreme Court of the United States. The Supreme Court. This is like No, go ahead. And so that would extend to sort of false accident reports. It would Because I don't really think The context is slightly different. That is it immunizes testimony that is given in open court. Right. Your whole point about the accident reports is they have nothing to do with court. Correct. Correct. So with respect to the false statement never getting into the court, we're not even to Briscoe v. Lequeu. I'm not saying it very well because this is kind of evolving in my own mind as I'm standing here. So forgive me for that. And forgive me for also having admitted that. But with respect to if a purposeful and intentional act can be rendered immune, that is a police officer who lies in an inculpatory way. An interesting flip of the Briscoe v. Lequeu holding is that the opposite isn't true. If there is false testimony by a law enforcement officer that exculpates someone, then that actually can be the basis of  as I read Briscoe v. Lequeu owing back to the construction south. That's kind of my understanding of it. But again, not here. If an intentional inculpatory statement that comes into court and is weighed by a jury in a  proceeding can be immunized and it does not raise an issue of moment with respect to the rights of a person to  in court. It  really matter because I guess it probably doesn't matter. It seems a little bit apples and oranges to me. I think we have a lot of rules around testimony in court being immune, court actions being immune, judges, prosecutors, jury witnesses, and I'm not sure that extends beyond that particular context, but I suppose if we hypothetically were to send this case back to the district court, you could raise immunity arguments or immunity adjacent arguments there. I understand Your Honor's observation with respect to apples and oranges. I would maybe say apples and pears, but thank you.  appreciate the court's grace. Thank you. Mr. Hendrick, do you have a few moments? Mr. Hendrick, does the outline of the procedural posture that was just given to us in state court suggest to you any changes in your recommendation to us? At this moment, no, because there has still been no final action on the state court. There is no final ruling in this case or in the state court case on the  distress claim. I certainly recognize that in three weeks that case could be  We are not asking for a second bite at the  If we lose in Virginia Beach, we get another chance in the federal district court in  It may certainly be moot at some point.  certainly notify the court if something happens in the meantime before this court has issued a decision.   that the federal court take it at that point if this case is remanded. I certainly recognize that could change based on what happens in that case in the near future. That is the state claim? That is the state law and motion distress claim. Correct. On the conspiracy claim, I can agree with Mr. Kales that if there is no constitutional violation and we don't have a conspiracy claim, our case is that we have a constitutional violation for retaliation. If we do, the district court ought to reconsider the conspiracy claim. On the retaliation claim, Mr. Kales made a lot of arguments. A lot of them come down to I think we don't think the police officers acted that way on purpose or maybe they were just talking. I think that is a defense they could raise but it ought to be on the facts and it  be a  That is what we are  Thank you.     We will ask the court to adjourn the court until tomorrow morning at 930. We will come down and reconvene. We will
judges: Roger L. Gregory, Pamela A. Harris, Louise W. Flanagan